## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHEILA M. CLARK,

                *Plaintiff*,

     v.

JEH JOHNSON, Secretary of Homeland Security, and DEPARTMENT OF HOMELAND SECURITY,

                *Defendants*.

Civil Action No. 14-120 (RDM)

## MEMORANDUM OPINION AND ORDER

      Sheila Clark, who is proceeding *pro se*, alleges that her former employer, Federal Emergency Management Agency ("FEMA"), discriminated against her on the basis of race and retaliated against her for engaging in protected conduct, in violation of Title VII of the Civil Rights Act of 1964. FEMA, which is a component of the Department of Homeland Security ("DHS"), revoked Clark's security clearance and terminated her employment following investigations into alleged misconduct. The first investigation, which was conducted by FEMA, arose from allegations made in an anonymous letter, and the second investigation—which FEMA referred to another component of DHS for investigation—arose from evidence of unrelated misconduct discovered in the course of the initial investigation. Clark alleges that she was subjected to disparate treatment on the basis of her race during both investigations, and that in the second investigation, FEMA retaliated against her for filing Equal Employment Opportunity ("EEO") and whistleblower complaints.

      FEMA has moved to dismiss or, in the alternative, for summary judgment on the grounds that (1) all of Clark's claims are non-justiciable because the Court cannot review matters related

to Executive Branch security-clearance decisions, (2) Clark failed to exhaust administrative remedies with respect to some of her claims, and (3) Clark does not allege an adverse employment action. *See* Dkt. 8. For the reasons explained below, the Court will grant in part and deny in part FEMA's motion.

## I. BACKGROUND

Clark, an African-American woman, worked as the Chief Component Human Capital Officer for FEMA from December 26, 2010, until her termination on May 6, 2013. Compl. ¶¶ 4, 14. According to her formal EEO complaint, Clark had been in federal service for twenty-eight years, Dkt. 8-11 at 36, culminating in her "rank" as a member of the Senior Executive Service, *id.* at 25; Compl. ¶ 14.[1] Around December 12, 2011, however, the DHS Office of the Inspector General ("OIG") received an anonymous letter alleging misconduct by Clark and others. *Id.* ¶ 16. (The nature of the alleged misconduct is not described in the complaint.) Although the OIG declined to investigate the allegations, FEMA's Office of the Chief Security Officer ("OCSO") began an investigation. *Id.* ¶ 17. In the course of that investigation, OCSO reviewed Clark's email and discovered evidence that Clark "may have [engaged in misconduct by] assist[ing] with the hiring of OSCO Special Agent Marvin Washington." *Id.* ¶¶ 18, 26. In May 2012, FEMA referred the allegations that Clark committed misconduct in the hiring of

---

[1] "In adjudicating a motion to dismiss for failure to state a claim, a court may consider, along with the facts alleged in the complaint, 'any documents either attached to or incorporated in the complaint and matters' subject to 'judicial notice.'" *Nichols v. Vilsack*, No. 13-01502, 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). When Clark's complaint in this action is read in combination with her formal administrative complaint, which is referenced in her complaint, *see* Compl. ¶ 11, the Court is able to discern the following factual allegations on which she premises her claims. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013) (taking judicial notice of formal administrative complaint that, "though not attached to [plaintiff's] complaint, [is] referred to in the complaint, . . . [is] integral to [plaintiff's exhaustion of administrative remedies, and [is] a public record[] subject to judicial notice" (internal citation omitted)).

Washington to another component of DHS, the U.S. Citizenship and Immigration Services's ("USCIS") Office of Security and Integrity ("OSI"), for investigation. *Id.* ¶ 26.

Between July 2012 and the end of August 2012, Clark was absent from work on medical leave. Dkt. 8-11 at 29. Clark nonetheless initiated the informal EEO process on July 24, 2012. Compl. ¶¶ 10, 52; Dkt. 8-11 at 5 n.5. It appears that Clark's initial complaints focused on matters not at issue in this litigation. Dkt. 8-11 at 39. Over time, however, Clark supplemented her complaints, asserting, for example, that her supervisor had sought to discredit and demean her by telling "the entire office" that Clark was "under investigation and [that] the case [was] mov[ing] forward." Dkt. 8-11 at 40, 45-46. Then, according to the complaint, on August 17, 2012, Clark "made a whistleblower disclosure against FEMA leadership." Compl. ¶ 27. The complaint does not reveal the nature of Clark's disclosure.

The complaint further alleges that, on September 27, 2012, John Rooney, the selecting official for the OSCO special agent position for which Washington was hired, referred allegations relating to Clark's conduct in assisting Washington to the U.S. Attorney's Office for prosecution. Compl. ¶¶ 28, 70. In particular, one issue under investigation was whether Clark violated the Privacy Act, 5 U.S.C. § 552a, by disclosing certain agency records to Washington. According to Rooney, he made the referral at the request of the FEMA Office of Chief Counsel simply to obtain a declination of prosecution in order to facilitate OCSA's efforts to interview Clark as part of its investigation. Dkt. 8-14 at 6. Clark disputes this account, Dkt. 18 at 47-49, but all agree that the U.S. Attorney's Office declined to prosecute. On October 1, 2012, Clark was detailed to a special human resources project for 120 days, Compl. ¶ 29; Dkt. 8-11 at 34, and on October 3 and 4, 2012, she was interviewed by two USCIS special agents as part of the administrative investigation, Compl. ¶ 45.

The day after she was interviewed, Clark filed a formal EEO complaint alleging that FEMA "engaged in an ongoing pattern and practice of discrimination and hostile work environment harassment toward [her] on the basis of [her] race (African American), color (brown complexion), sex (female), disability (perceived) and prior EEO activity." Dkt. 8-11 at 29. As relevant here, the EEO complaint alleged that Clark is "a member of FEMA's senior leadership[,] yet [she] [is] continuously treated differently (disparate treatment)." *Id.* at 32. Clark claimed that the allegations of "misconduct concerning" her assistance to Washington in the FEMA hiring process "should have been handled through an independent investigation" "[p]er FEMA's own policy," but that, instead, FEMA ignored requirements applicable to administrative investigations in order to "pursue a fishing/witch hunt expedition with no boundaries." *Id.* at 33–34. Clark further alleged that "the entire [administrative investigation] process was inconsistent . . . [with] how other similarly situated executives are" treated; that she was subjected to disparate treatment with respect to the October 3 and 4th interviews; that "Rooney's actions did not follow FEMA's normal practices (disparate treatment) or DHS policy in forwarding matters that they believe are criminal in nature to the DHS OIG to investigate;" and that she "believ[ed] [that she] was treated in this manner because [she is] an African-American female." *Id.* at 34–35. Clark also alleged that she was detailed to the special human resources project in retaliation for her EEO complaint. Dkt. 8-11 at 34.

At some point following the USCIS investigation, Clark was placed on administrative leave for twenty-two weeks. *Id.* ¶ 78. On December 6, 2012, her top secret security clearance was suspended. *Id.* ¶ 79. Then, on May 6, 2013, Clark was removed from federal service "for inappropriate conduct," *id.* ¶ 80, and on June 25, 2013, her security clearance was revoked, *id.* ¶ 81.

Clark filed this suit on January 30, 2014. *See* Dkt. 1. Clark's complaint alleges disparate treatment in the course of FEMA's investigation into the anonymous letter and disparate treatment and retaliation with respect to the subsequent USCIS investigation.[2] With respect to the investigation of the anonymous letter, Clark alleges that FEMA used the investigation as a pretext to search her email and that, when non-African American employees were investigated, their emails were not searched. Compl. ¶¶ 18–23. She further alleges that the subsequent USCIS investigation was conducted in retaliation for "her prior EEOC activity and whistleblower disclosures" and that she was again subjected to disparate treatment in the course of that investigation. *Id.* ¶¶ 47–52.

With respect to disparate treatment in the USCIS investigation, Clark claims that USCIS's investigation of her was purportedly governed by the "USCIS OSI Investigations Division Operational Guidance," and that, in contrast, when non-African American employees are investigated, those investigations are conducted either by FEMA or the DHS OIG and the investigations are governed by FEMA regulations. *Id.* ¶¶ 46–50. She further alleges that she was required to complete two sworn statements as part of the investigation, and that, in contrast, when non-African American employees are under investigation, they are either not interviewed at all or not required to provide statements under oath, *id.* ¶ 51, and that unlike in her case, "[w]hen allegations of . . . misconduct [involving] white employees are made, [those employees] are not detailed from their positions," *id.* ¶ 30. Clark also points to several other claimed

---

[2] Although Clark's allegations are included in a single count, that does not preclude the Court from treating them as raising more than one claim. *See Nichols v. Vilsack*, No. CV 13-01502 (RDM), 2015 WL 9581799, at *9 (D.D.C. Dec. 30, 2015) ("'Although absence of segregation in the complaint doubtless complicates the court's task, the complication can presumably be cured by insistence on suitably targeted briefing, and is not an independent ground for' treating the allegations as raising only discrete claims." (quoting *Baird v. Gotbaum*, 662 F.3d 1246, 1253 (D.C. Cir. 2011)).

irregularities in the USCIS investigation, including that (1) she did not receive a Required

Appearance Memorandum prior to being interviewed, *id.* ¶¶ 58, 64; (2) the misconduct

allegations were not referred to the DHS OIG, *id.* ¶ 61; (3) she was not given an opportunity to

review or correct a transcript of the interview, *id.* ¶ 62; (4) she "was asked over 340 questions" in

the interview, *id.* ¶ 63; (5) she received a "*Kalkines* notice" [3] the day of the interview, *id.* ¶ 65;

(6) the investigation was biased, *id.* ¶ 66; and (7) "[t]he USCIS investigators coerced statements

from witnesses," *id.* ¶ 67.  Finally, Clark alleges that as a result of the purportedly discriminatory

and retaliatory investigation, she was placed on administrative leave for twenty-two weeks, her

security clearance was suspended, she was removed from federal service, and her security

clearance was revoked.  *Id.* ¶¶ 77–81.

      Rather than answer the complaint, FEMA moved to dismiss or, in the alternative, for

summary judgment, appending various evidentiary exhibits to its motion—some of which were

part of the EEO administrative record, and some of which were not. *See* Dkt. 8.  Consistent with

the D.C. Circuit's decision in *Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988), FEMA advised

Clark that her failure to respond to the motion could result in dismissal of her case.  Dkt. 8 at 1.

Clark filed a memorandum opposing FEMA's motion, but did not offer any additional evidence

in support of her position and did not provide a statement of material facts in dispute, *see* Dkt.

11, and FEMA filed its reply brief, *see* Dkt. 13.  The Court then issued a *Fox-Neal* order further

cautioning Clark about the need fully to respond to FEMA's motion, including the need to

identify any contested issues of fact, as required by Federal Rule of Civil Procedure 56, and

providing Clark with an opportunity to file a supplemental response or opposition.  Dkt. 15.

---

[3] *See generally Kalkines v. United States*, 473 F.2d 1391 (Cl. Ct. 1973) (invalidating employee discharge for refusal to answer questions when investigator failed to advise employee that answers and their fruits could not be used against him in criminal prosecution).

*See* Dkt. 15 at 1; *see also Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988); *Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992). Clark accepted this invitation and filed a revised opposition to FEMA's motion on August 31, 2015, along with a statement of disputed facts and documentary evidence.[4]   *See* Dkt. 18.

## II.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Id.* (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C.Cir.1979)). Furthermore, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 533 (D.C. Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "The [C]ourt, however, need not accept as true a legal conclusion couched as a factual allegation, or inferences . . . unsupported by the facts set out in the complaint." *Ames v. Johnson*, 121 F. Supp. 3d 126, 129 (D.D.C. 2015) (internal quotation marks and citations omitted) (second alteration in original).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is

---

[4] Because Clark included a statement of disputed facts in her revised opposition, the Court rejects FEMA's argument (made before the Court issued its *Fox-Neal* order) that the Court should treat FEMA's statement of undisputed material as admitted. *See* Dkt. 13 at 2–3.

material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. To prevail at summary judgment, the non-moving party must, however, offer more than "a scintilla of evidence" in support of its position. *Id.* at 252. "[T]here must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

## III.   ANALYSIS

### A.   Justiciability

FEMA first contends that this case must be dismissed in its entirety because it involves national security matters that are non-justiciable under *Navy v. Egan*, 484 U.S. 518 (1988). *See* Dkt. 8 at 17. The Court reviews this portion of FEMA's motion under the standards applicable to a motion to dismiss, as FEMA contends that "it is clear on the face of the complaint that" Clark's Title VII charges are barred under *Egan* and does not rely on any evidence outside the complaint in support of its non-justiciability argument. Dkt. 8 at 19; *see also* Dkt. 13 at 3–6. The D.C. Circuit, moreover, has held that a motion to dismiss under *Egan* should be reviewed pursuant to Rule 12(b)(6), and not for lack of subject-matter jurisdiction under Rule 12(b)(1). *See Oryszak v. Sullivan*, 576 F.3d 522, 525 (D.C. Cir. 2009) (holding issue of non-justiciability under *Egan* does not go to Court's subject-matter jurisdiction); *see also Ames v. Johnson*, 121 F. Supp. 3d 126, 129 (D.D.C. 2015) (same); *cf. Thomas v. Johnson*, 4 F. Supp. 3d 157, 159–60

(D.D.C. 2014) (ruling on non-justiciability under *Egan* on motion for judgment on the pleadings pursuant to Rule 12(c)).[5]

In *Egan*, the Supreme Court held that the Merit Systems Protection Board ("MSPB") lacked authority "to review the substance of an underlying decision to deny or revoke a security clearance," *id.* at 520, "where the grant of security clearance to a particular employee [is] a sensitive and inherently discretionary judgment call . . . committed by law to the appropriate agency of the Executive Branch," *id.* at 527. The Court explained that "the protection of classified information must be committed to the broad discretion of the agency responsible" and that "it is not reasonably possible for an outside non[-]expert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction [of potential risk] with confidence." *Id.* at 529.

The D.C. Circuit has applied *Egan* to bar Title VII claims challenging "an adverse employment action based on denial or revocation of a security clearance." *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999); *see also Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005). As it has explained, employment-discrimination cases are typically reviewed under the *McDonnell Douglas* burden-shifting framework, the second step of which requires "the defendant employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action." *Ryan*, 168 F.3d at 523 (quoting *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 26 (D.C. Cir. 1997)).

---

[5] Any lingering confusion about whether *Egan* implicates the Court's jurisdiction may stem from the fact that the D.C. Circuit has not addressed whether a defendant can waive an *Egan* issue, and relatedly, whether the Court should raise an *Egan* issue *sua sponte*. *See Rattigan v. Holder* ("*Rattigan I*"), 643 F.3d 975, 982 (D.C. Cir. 2011) (declining to reach whether the non-justiciability of a claim may be waived, citing Judge Ginsburg's concurrence in *Oryszak*); *Oryszak*, 576 F.3d at 526–27 (Ginsburg, J., concurring) (arguing that although *Egan* does not deprive a court of subject-matter jurisdiction, "a court must decline to adjudicate a non[-]justiciable claim even if the defendant does not move to dismiss it under Fed. R. Civ. P. 12(b)(6)"). Neither of those considerations are at issue here.

And, in cases based on the denial or revocation of a security clearance, "a court cannot clear the second step of *McDonnell Douglas* without running smack up against *Egan*" because, when the government's proffered non-discriminatory reason pertains to national security, the plaintiff "c[an]not challenge the proffered reason's authenticity without also challenging its validity." *Id.* Thus, under *Egan*, when the "district court . . . c[an]not proceed with the . . . discrimination action without reviewing the merits of [the] decision not to grant a clearance, the court [is] foreclosed from proceeding at all." *Id.*

FEMA is thus correct to the extent that it argues that, under *Egan* and its progeny, Clark cannot challenge the suspension or revocation of her security clearance or decisions "tantamount to [security] clearance denials." *Id.* at 524; *see also Bland v. Johnson*, 66 F. Supp. 3d 69, 73 (D.D.C. 2014) (holding *Egan* applies to suspension of security clearance), *rev'd in part on other grounds*, 637 F. App'x 2 (D.C. Cir. 2016). But FEMA's argument that *Egan* "also bars review of related actions leading up to [the security clearance] decision," *see* Dkt. 8 at 21, sweeps too broadly. In support of that argument, FEMA relies on cases from other circuits holding that the initiation of a security investigation and the "circumstances surrounding" a clearance revocation are unreviewable under *Egan*. Dkt. 8 at 21 (citing *Hill v. White*, 321 F.3d 1334 (11th Cir. 2003); *Becerra v. Dalton*, 94 F.3d 145 (4th Cir. 1996); *Panoke v. U.S. Army Military Police Brigade*, 307 Fed. App'x. 54 (9th Cir. 2009); *Hall v. U.S. Dep't of Labor, Admin. Review Bd.*, 476 F.3d 847, 853 (10th Cir. 2007)). It is far from clear that these out-of-circuit precedents would support FEMA's capacious reading of *Egan*. But, even if they did, "this Court is bound by D.C. Circuit precedent." *See Burns-Ramirez v. Napolitano*, 962 F. Supp. 2d 253, 257 (D.D.C. 2013) (rejecting contention that *Hill*, *Becerra*, and *Panoke* support broad rule of non-justiciability in this Circuit). And, under the D.C. Circuit's decision in *Rattigan v. Holder* ("*Rattigan II*"), "*Egan*

[does not] insulate[] from Title VII *all* decisions that might bear upon an employee's eligibility to access classified information." 689 F.3d 764, 767 (D.C. Cir. 2012) (emphasis in original).

As the Court of Appeals explained in *Rattigan II*, "*Egan* emphasized that the decision to . . . deny security clearance requires a '[p]redictive judgment' that 'must be made by those with the necessary expertise in protecting classified information.'" *Id*. (quoting *Egan*, 484 U.S. at 529). "It is this expert, predictive judgment made by 'appropriately trained' personnel that *Egan* insulates from judicial review." *Id*. (quoting *Rattigan v. Holder* ("*Rattigan I*"), 643 F.3d 975, 983 (D.C. Cir. 2011)). From this general principle, the Court of Appeals derived two distinct rules. First, where a plaintiff challenges a "security clearance-related decision[] made by trained" personnel, *Egan* imposes an "absolute bar on judicial review." *Id*. at 768. Second, suit is also barred in cases in which "Title VII liability for security reporting claims w[ould] impair the ability of the [responsible officials] to [perform their duties] by 'chill[ing] the timely and adequate reporting of security issues.'" *Id*. (internal quotation marks omitted). Unlike challenges to security clearance-related decisions themselves, however, this latter rule is not absolute; in particular, because a "*knowingly* false reporting present[s] no serious risk of chill," permitting Title VII claims in those circumstances "can coexist with *Egan*" and the Executive Order on access to classified information. *Id*. at 770. Stated more broadly, the second rule recognizes that Title VII litigation that does not directly challenge the revocation or suspension of a security clearance may implicate national security concerns and the discretion and expertise of the Executive Branch to assess who should have access to classified information. *See* Executive Order 12,986. But because decisions or actions of that type do not trigger the absolute bar imposed in *Egan*, "the limits . . . place[d] on Title VII liability for [these] *other* decisions

must be no broader than necessary to protect the integrity of the [agency's] security clearance-related responsibilities." *Rattigan II*, 689 F.3d at 771 (emphasis in original).[6]

The Court, accordingly, agrees with FEMA that *Egan* precludes Clark from challenging the suspension and revocation of her security clearance. But, at least at this juncture, FEMA has not shown that adjudication of Clark's other claims would chill any of the processes—including the reporting of security concerns—contemplated by Executive Order 12,986 or that it would otherwise interfere with "the integrity of [Executive Branch's] security clearance-related responsibilities." In her opposition, Clark explains that she seeks to challenge the disparate treatment that she allegedly received during the investigation of the misconduct allegations against her—including the interview procedures, departures from FEMA regulations, and the detail from her position—and that she believes this treatment was retaliatory. *See* Dkt. 18 at 1–2. Adjudication of these claims "merely requires consideration of whether similarly situated employees were treated the same under the relevant policies, a consideration that lies squarely within the Court's Title VII jurisdiction." *Thomas*, 4 F. Supp. 3d at 160. Indeed, it is unclear that these claims even implicate the substance of the allegations made against Clark. Similarly, it is difficult to understand—and FEMA has failed to elucidate—how FEMA's decision to assign Clark to a 120-day detail before her clearance was suspended or revoked has anything to do with Executive Order 12,968 or the discretion of the Executive Branch to make security-clearance decisions free from judicial interference.

---

[6] FEMA contends that *Rattigan I* and *Rattigan II* are simply inapplicable here because "the plaintiff in *Rattigan* had received a 'favorable' security clearance decision," whereas Clark "did not receive a 'favorable' security clearance decision." Dkt. 8 at 22 n.2. "While it is true that Mr. Rattigan's security clearance was not revoked, the reasoning of *Rattigan I* and *II* was not in any way based on this fact." *Burns-Ramirez v. Napolitano*, 962 F. Supp. 2d 253, 257 (D.D.C. 2013).

This is not to say that FEMA is necessarily foreclosed from pursuing its broader *Egan* defense. If FEMA can demonstrate, for example, that the steps the agency took against Clark were based on predictive judgments about national security made by "those with the necessary expertise in protecting classified information" *Rattigan II*, 689 F.3d at 767 (quoting *Egan*, 484 U.S. at 529), it would have solid basis for re-asserting the defense. But, as the record now stands, there is no basis to conclude that any such judgments informed any of FEMA's actions other than its ultimate suspension and revocation of Clark's top secret clearance. And if Clark suffered an adverse action based on a violation of a generally applicable policy, rather than based on a national-security determination, *Egan* would not bar her claims. *Compare, e.g.*, *Ames*, 121 F. Supp. 3d at 132 (explaining that *Egan* arguably would not bar a claim where plaintiff was suspended for "adjudicat[ing] a security clearance under a 'conflict of interest'" because "[s]he either operated under a conflict of interest or she did not"), *Jones v. Ashcroft*, 321 F. Supp. 2d 1, 8 (D.D.C. 2004) (FBI's suitability determination not subject to *Egan* because it was "distinct from national security determinations"), *and Thomas*, 4 F. Supp. 3d at 160 (finding *Egan* inapplicable because "Plaintiff's demotion is not alleged to have been 'based on' any decision regarding his eligibility for a security clearance. Instead [he] alleges that he was demoted based on (among other things) his purported violation of a general policy . . . ."), *with Bennett*, 425 F.3d at 1003 (holding *Egan* applicable where government offered sworn statement that plaintiff's "termination was 'due to her inability to sustain a security clearance'"). For present purposes, however, the Court must reject FEMA's contention that it is "clear on the face of the complaint" that *Egan* bars *all* of Clark's claims. Dkt. 8 at 19

For the foregoing reasons, the Court will dismiss with prejudice Clark's complaint to the extent that it seeks to challenge the suspension and revocation of her security clearance, *see*

Compl. ¶¶ 79, 81, but, on the present record, will decline to dismiss the remainder of the complaint as non-justiciable.

## B.    Exhaustion

Next, FEMA alleges that Clark failed to exhaust administrative remedies with respect to some of her claims. *See* Dkt. 8 at 28–29. "Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." *Brown v. Marsh*, 777 F.2d 8, 14 (D.C. Cir. 1985). A Title VII complainant must timely exhaust administrative proceedings before filing suit in federal court, although the limits are not jurisdictional and "are subject to equitable tolling, estoppel, and waiver." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Failure to exhaust is an affirmative defense, which is typically resolved at summary judgment. *See Nichols*, 2015 WL 9581799, at *7. Although it is unclear that FEMA's exhaustion motion requires consideration of any material beyond "the pleadings and undisputed [administrative] documents in the record," *see id.* (quoting *Bowden v. United States*, 106 F.3d at 437; Dkt. 18 at 23–35, the Court will, out of an abundance of caution, resolve this portion of FEMA's motion under the summary judgment standard.

The EEOC has promulgated detailed regulations establishing administrative procedures for the resolution of Title VII employment discrimination claims against federal agencies. The D.C. Circuit has summarized those procedures as follows:

> Under Title VII, [federal] employees who believe they have been discriminated against must first consult an Equal Employment Opportunity (EEO) Counselor within 45 days of the alleged discriminatory acts. 29 C.F.R. § 1614.105(a)(1). Should the employee and the Counselor fail to resolve the discrimination claim within 30 days, the Counselor sends the employee a notice explaining the administrative complaint procedure. *Id.* § 1614.105(d). The employee then has 15 days to file an individual and/or class complaint with the employing agency. *Id.* § 1614.106 (regulations governing individual complaints); *id.* § 1614.204

> (regulations governing class complaints); *see also id.* § 1614.103 (noting types of complaints governed by agency processing procedures outlined in regulations). Upon receipt of a final agency decision—known as a "FAD"—disposing of the administrative complaints, the employee has either 30 days to appeal to the Equal Employment Opportunity Commission (EEOC), *id.* §§ 1614.401(a), 1614.402(a), or 90 days to file suit in federal court, 42 U.S.C. § 2000e–16(c).

*In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006). An employee is also authorized to file suit in federal court if, as here, 180 days have passed from the "date of filing an appeal with the" EEOC and the EEOC has failed to render a final decision. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407(d).

The following facts regarding Clark's efforts to exhaust her administrative remedies are undisputed. The parties agree that Clark initiated EEO counseling on July 24, 2012 and amended her informal complaint twice, once on August 1, 2012, and again on September 10, 2012. *See* Dkt. 8 at 5 (Def.'s SUMF ¶ 13); Dkt. 18 at 40 ("Clark accepts Def. Fact[] . . . [¶] 13). They agree that she filed her formal EEO complaint on October 5, 2012, *see* Dkt. 18 at 6 (Def.'s SUMF ¶ 19); Compl. ¶ 11; Dkt. 18 at 51, although the agency's EEO office did not accept the complaint for investigation until February 11, 2013, *see* Dkt. 8 at 27; Dkt. 18 at 51. They also agree that when Clark filed this suit on January 30, 2014, 180 days had transpired without final agency action on her EEO complaint. *See* Dkt. 8 at 7 (Def.'s SUMF ¶ 21); Dkt 18 at 53. Finally, the parties agree that on May 30, 2013, Clark appealed her termination to the MSPB—a mixed-case appeal in which she alleges both that she did not commit misconduct and that her termination was discriminatory and retaliatory—and that as of February 29, 2014, the MSPB administrative judge had not issued a decision on the appeal. *See* Dkt. 8 at 9 (Def.'s SUMF ¶ 30); Dkt. 8-12 at 1–4; Dkt. 18 at 40 ("Clark accepts Def. Fact[] . . . ¶ 30); *see also* 29 C.F.R. § 1614.302(a)(2) ("A mixed case appeal is an appeal filed with the MSPB that alleges that an

appealable agency action was effected, in whole or in part, because of discrimination on the basis

of race, color, religion, sex, national origin, disability, age, or genetic information.").

The parties dispute, however, whether the EEO proceedings encompassed the claims

raised in this action and, for that matter, what claims Clark is raising here. According to FEMA,

Clark has failed to exhaust administrative remedies with respect to her allegations that:

> (1) FEMA engages in a pattern and practice of systemic discrimination against
> African Americans; (2) the investigation of Plaintiff's misconduct that USCIS
> conducted on behalf of FEMA OSCO was discriminatory and retaliatory; and (3)
> as a result of the discriminatory investigation, Plaintiff was (a) placed on
> administrative leave . . . ; (b) her security clearance was suspended . . . ; (c) she was
> removed from the [f]ederal service . . . ; (d) her security clearance was revoked . . . .

Dkt. 8 at 29 (internal citations omitted). FEMA concedes that Clark exhausted claims regarding

"her detail to work on a special project in October 2012; FEMA's investigation of anonymous

allegations that she committed misconduct; her treatment relating to an October 3–4, 2012

interview by USCIS; and the forwarding of her misconduct case to the U.S. Attorney's Office in

September 2012." Dkt. 8 at 28 (internal citations omitted).

Clark responds that FEMA has misinterpreted her claims and that, by redefining her

claims, it has incorrectly "infer[e]d that she has not exhausted the administrative process." Dkt.

18 at 21. According to Clark, she is currently challenging only FEMA's failure to follow its own

regulations, policies and procedures in the misconduct investigation, *see* Dkt. 18 at 21; the

"punitive detail," *id.* at 27; and disparate treatment with respect to the interview by USCIS

officers, *id. See also id.* at 1–2.

Clark, of course, is the master of her own complaint, and, in light of her response, the

Court construes her complaint as not raising a systemic discrimination claim; to the extent she

includes allegations of disparate treatment of other African-American employees, *see* Compl.

¶¶ 20–23, 30–43, the Court will construe these allegations as providing general background and

support for Clark's allegations that *she* was the victim of racial discrimination.   The Court also need not address FEMA's contention that Clark failed to exhaust her challenge to the suspension and revocation of her security clearance because, as explained above, any such allegations are in any event non-justiciable.   *See supra* pp. 8–14.

As for FEMA's contention that Clark has failed to exhaust administrative remedies regarding her placement on administrative leave and her subsequent termination, it is unclear whether Clark even intends to pursue a challenge to either of these actions here.  Although her complaint states that her placement on leave and subsequent termination resulted from the allegedly discriminatory and retaliatory misconduct investigation, *see* Compl. ¶¶ 78, 80, the bulk of the complaint focuses on the alleged disparate treatment and retaliation in the course of the investigation and her placement on detail, *see id.* ¶¶ 14–77.  In addition, as noted above, Clark's opposition brief frames her case as a challenge to the "regulations, policy and procedure" that FEMA followed in its investigation, to FEMA's decision to detail Clark to a special human resources project for 120 days, and to the manner in which FEMA conducted her interview on October 3 and 4, 2012.  *See* Dkt. 18 at 1–2.  Moreover, Clark has sought to exhaust a challenge to her termination in a *separate* mixed-case complaint filed with the MSPB, and she has never suggested that she intends to incorporate the grievances that she has raised with the MSPB into this action.  *See* Dkt. 8-12 at 1–4; Compl. ¶¶ 10–13 (stating that Clark exhausted her administrative remedies in the 2012 EEO proceeding); Dkt. 8 at 9 (SUMF ¶ 30) ("The MSPB Administrative Judge has not yet issued an initial decision on the appeal"); Dkt. 18 at 40 ("Clark accepts Def. Fact[] . . . [¶] 30").  To the contrary, FEMA reports that at least as of February 2014—after this action was filed—the parties were still actively litigating the MSPB case. Dkt. 8 at 34 n.5

In any event, to the extent that Clark is alleging—in this action—that her placement on administrative leave or her termination were discriminatory and retaliatory adverse actions, she did not administratively exhaust those claims in the 2012 EEO proceedings. "Where an employee alleges discrete claims of discrimination [or retaliation], such as a failure to promote or a demotion[,] . . . the employee must exhaust administrative remedies for each discrete claim." *Achagzai v. Broad. Bd. of Governors*, No. 14-768, 2016 WL 1089214, at *4 (D.D.C. Mar. 18, 2016), *reconsideration denied*, No. 14-768, 2016 WL 2642959 (D.D.C. May 9, 2016). Clark did not raise her placement on administrative leave or her termination in her October 5, 2012 EEO complaint, and, in fact, her administrative complaint preceded those events. *See* Dkt. 8 at 5–9, (Def.'s SUMF ¶¶ 13, 19, 21, 24, 29, 30); Compl. ¶ 11; Dkt. 18 at 40, 51. Nor did Clark subsequently amend her EEO complaint to include those events. *Cf. Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007) (holding plaintiff can exhaust subsequently occurring, related claims by amending formal EEO complaint).

Although before the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), a "plaintiff [could] pursue an unexhausted claim if that claim was 'like or reasonably related to the allegations of [an] [exhausted] charge and grow[s] out of such allegations,' . . . [m]ost district court decisions in this circuit have concluded that this rule did not survive *Morgan*." *Achagzai v. Broad. Bd. of Governors*, No. 14-768, 2016 WL 471274, at *6 (D.D.C. Feb. 8, 2016) (citing *Rashad v. Wash. Metro Area Transit. Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013)). Rather, following *Morgan*, "the procedural requirements of Title VII . . . must be assessed on a claim-by-claim basis and . . . satisfaction of the procedural requirements for a 'relate[d]' act of discrimination is insufficient, except in those cases in which the 'very nature' of the claim 'involves repeated conduct.'" *Hargrove v. AARP*, No. 13-1320 (RDM), slip

op. at 35 (D.D.C. Sept. 9, 2016) (quoting *Morgan*, 536 U.S. at 114-15)).  To the extent Clark

seeks to pursue claims for wrongful termination or suspension, those claims would fall squarely

in the category of discrete acts of alleged discrimination requiring separate exhaustion. *See*

*Morgan*, 536 U.S. at 114 ("Discrete acts" include actions "such as termination, failure to

promote, denial of transfer, or refusal to hire").  Because Clark has failed to exhaust her

administrative remedies with respect to these claims, she may not pursue them in this

proceeding.  *Id.*

The Court also concludes that Clark failed to exhaust her claim that "FEMA did not

investigate the allegations of misconduct against [her] in accordance with regulations, policy and

procedures.'"  Dkt. 18 at 2.  FEMA contends that Clark failed to "advise the EEO Counselor that

she believed the USCIS investigation itself to be discriminatory," citing the EEO counselor's

report of investigation.  Dkt. 8 at 32.  At the informal counseling stage, the employee need not

"expressly identify . . . the precise action or legal theory that she thereafter raised in her formal

EEO complaint and in her district court complaint," because counseling is intended to be "'a step

toward remediation'" rather than "'a trap for unwary counselees.'" *Miles v. Kerry*, 961 F. Supp.

2d 272, 287 (D.D.C. 2013) (quoting *Artis v. Bernanke*, 630 F.3d 1031, 1034–35 (D.C. Cir.

2011)).  But the informal counseling process initiated by the employee must be sufficient to

achieve the purpose of the counseling requirement—that is, "to enable the agency and its

employee to try to informally resolve the matter before an administrative charge is filed." *Id.*

(quoting *Artis*, 630 F.3d at 1034).  Here, the undisputed facts establish that Clark failed to meet

even that low bar.

The counselor's report cited by FEMA contains no indication that Clark ever mentioned

or raised any failure of the USCIS investigators to comply with FEMA regulations and

procedures. *See* Dkt. 8-11 at 38–70.  Rather, Clark discussed with the counselor allegations that

a supervisor named Carla Gammon created a hostile work environment by requiring Clark to

provide additional documentation of her medical leave. Dkt. 8-11 at 38–44.  Clark then amended

her informal complaint to assert that Gammon also violated her rights under Title VII by telling

Clark's staff that Clark was under investigation and that a work experience survey was

conducted in a discriminatory and retaliatory manner. *See* Dkt. 8-11 at 45–48.

      Had Clark identified any evidence disputing FEMA' characterization of the issues she

raised in the counseling process, the Court might well conclude that summary judgment is not

warranted. *See, e.g.*, *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (reversing grant of

summary judgment on non-exhaustion grounds where record reflected "discrepancy" as to

whether employee contacted EEO counselor on an additional occasion).  But, avoiding summary

judgment requires that the non-movant identify actual countervailing evidence.  Indeed, the

Court cautioned Clark before offering her the opportunity to file a supplemental opposition that,

once the moving party produces evidence "that there is no genuine dispute as to any material fact

and [that] [it] is entitled to judgment as a matter of law," the non-moving party must then point

to evidence that there is in fact a genuine dispute of fact. Fed. R. Civ. P. 56(a); Dkt. 15 at 2.

Yet, despite receiving an opportunity to supplement her opposition, Clark offers no evidence or

argument that the EEO counselor's report and informal complaints proffered by FEMA provide

an inaccurate, incomplete, or misleading account of the issues she raised with the counselor.

*See, e.g.*, Dkt. 18 at 40, 46 (Pl.'s SUMF, accepting "as written" FEMA's account of her contact

with an EEO counselor).  And the Court's own review of the record does not reveal a "scintilla

of evidence" of a disputed issue of fact on the matter. *Liberty Lobby*, 477 U.S. at 252.  The

Court, accordingly, concludes that, at the counseling stage, Clark raised entirely different

allegations than those she raises here, preventing the "'counseling [from] produc[ing] sufficient information to enable the agency to investigate the claim.'" *Miles*, 961 F. Supp. 2d at 287 (quoting *Artis*, 630 F.3d at 1035)); *cf. Koch v. Walter*, 935 F. Supp. 2d 143, 151 (D.D.C. 2013) ("To satisfy the counseling requirement, an employee must present claims "in a manner that lends itself to potential resolution. . . . [P]roviding the agency with bare 'notice' of the basis of a complaint during the counseling stage is not enough." (quoting *Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C. Cir. 1998)).

For the foregoing reasons, the Court concludes that Clark failed to exhaust her administrative remedies with respect to challenges to her placement on administrative leave and suspension (to the extent Clark even seeks to raise such a claim here), and with respect to her claim that FEMA engaged in retaliation and disparate treatment by failing to follow FEMA regulations and procedures during the course of the misconduct investigation.

## C.     Adverse Action

Finally, FEMA contends that Clark's "claims (*i.e.*, other than her removal) do not meet the legal standards for a materially adverse action." Dkt. 8 at 37. In light of the Court's rulings with respect to non-justiciability and exhaustion, the Court will address only whether Clark has alleged a sufficient adverse action with respect to her claims regarding the detail and the October 3 and 4 USCIS interviews. *See* Dkt. 18 at 27 (Clark's description of her claims); *see also* Dkt. 8 at 27–28 (FEMA's concession that such claims were administratively exhausted). Because FEMA relies on evidence outside the administrative record in arguing that the detail did not constitute a materially adverse action, the Court applies the summary judgment standard in evaluating this defense.

To establish a prima facie case of disparate treatment under Title VII, a plaintiff must show that "(1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002). An adverse employment action is a "diminution in pay or benefits" or "some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). Thus, while "hiring, firing, failing to promote, [and] reassignment with significantly different responsibilities categorically are adverse employment actions," *Douglas v. Donovan*, 559 F.3d 549, 556 (D.C. Cir. 2009) (alteration in original) (internal quotation marks omitted), "[p]urely subjective injuries, such as dissatisfaction with a reassignment . . . or public humiliation or loss or reputation, . . . are not adverse actions," *Forkkio*, 306 F.3d at 1130–31. The question is not whether an employer has taken an action that makes "an employee unhappy," *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001), but whether the action resulted in a "significant" and "objectively tangible" harm, *Douglas*, 559 F.3d at 552 (internal quotation marks omitted).

A prima facie case of retaliation also requires the plaintiff to show that she suffered an adverse employment action. In retaliation cases, however, "the adverse action concept has a broader meaning" than in discrimination cases. *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (internal quotation marks omitted). "[A]ctions giving rise to [retaliation] claims are 'not limited to discriminatory actions that affect the terms and conditions of employment,' but reach any harm that 'well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).

With respect to Clark's contention that her detail to the special human resources project constituted an adverse action, FEMA responds that the assignment was only temporary—it was for 120 days, Compl. ¶ 29; Dkt. 8-11 at 34—and that it did not affect Clark's grade, salary, or SES status, *see* Dkt. 8 at 6 (Def.'s SUMF ¶ 17). Clark does not dispute this. *See* Dkt. 18 at 49–50 (Clark's "clarification" in response to Def.'s SUMF ¶ 17, stating only that Clark tried to tell her supervisor that she did not want to be detailed, but that her supervisor was out of the office). But, there remains a disputed issue of fact as to whether the detail was the equivalent of a "reassignment with significantly different responsibilities[,] [which] . . . generally indicates an adverse action." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (quoting *Forkkio*, 306 F.3d at 1131). Clark alleges that the detail was "for the purpose of demeaning [her] and reliev[ing] her of her duties as the head of human resources," Compl. ¶ 44, and, while Gammon avers that it was a detail to "an existing major project" involving an analysis of outsourcing, Dkt. 8-11 at 138, Clark contends that "[t]he project did not require 8 hours of work daily" yet became her "only duty at a SES pay level," *id.* at 88. On the present record, the Court cannot determine whether, despite "never suffer[ing] a reduction in grade, pay, or benefits," Clark nonetheless "experience[d] an extraordinary reduction in responsibilities . . . from which a reasonable jury could conclude [that she] suffered 'objectively tangible harm.'" *Holcomb*, 433 F.3d at 902.

Clark also argues that aspects of her October 3 and 4 USCIS interview constituted adverse action. In particular, she points to the following alleged irregularities in the interview: (1) she was required to complete two sworn statements, Compl. ¶ 51; (2) she did not receive a Required Appearance Memorandum prior to being interviewed, *id.* ¶¶ 58, 64; (3) she was not

given an opportunity to review or correct a transcript of the interview, *id.* ¶ 62; (4) she "was asked over 340 questions," *id.* ¶ 63; (5) she received a *Kalkines* notice the day of the interview, *id.* ¶ 65; (6) the investigation was biased, *id.* ¶ 66; and (7) "[t]he USCIS investigators coerced statements from witnesses," *id.* ¶ 67. With respect to disparate treatment claims, a "[m]ere investigation[] by plaintiff's employer"—much less an interview during such an investigation—"cannot constitute an adverse action because they have no adverse effect on plaintiff's employment." *Mack v. Strauss*, 134 F. Supp. 2d 103, 114 (D.D.C. 2001), *aff'd*, No. 01-5122, 2001 WL 1286263 (D.C. Cir. Sept. 28, 2001). That is, "although the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not." *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004). And in this case, as explained above, Clark has failed to exhaust a challenge to her placement on administrative leave and termination, which allegedly resulted from the misconduct investigation. *See supra* pp. 17–19.

Finally, although "the prospect of . . . an investigation" may in some circumstances be sufficiently harmful to "dissuade a reasonable employee from making or supporting a charge of discrimination"—that is, it may constitute an adverse action for purposes of a retaliation claim, *Velikonja v. Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006)—Clark has not adduced any competent evidence from which a reasonable jury could conclude that the foregoing alleged procedural irregularities in the October 3 and 4th interviews rose to such a level, *cf. Rattigan I*, 643 F.3d at 986 ("[R]eferral [for security investigation] alone created the very real possibility not only that Rattigan would face a stressful and potentially reputation-damaging investigation, but also that the FBI would revoke his security clearance and terminate his employment.").

The Court, accordingly, denies summary judgment to FEMA with respect to Clark's challenge to her detail, but grants summary judgment to FEMA with respect to her challenge to the October 3 and 4 interviews.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** dismissal with prejudice to FEMA to the extent that Clark seeks to challenge the suspension or revocation of her security clearance. The Court also **GRANTS** summary judgment to FEMA on Clark's remaining claims, with the exception of Clark's challenge to her October 1, 2012 detail. On the latter claim, summary judgment is **DENIED.**

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: September 12, 2016